IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GALINA USHAKOVA,

       Plaintiff,                  No. 2:11-cv-01920 KJN

   vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

       Defendant.              <u>ORDER</u>

_____/

       Plaintiff, who is represented by counsel, seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Supplemental Security Income benefits under Title XVI of the Social Security Act ("Act").[1]  In her motion for summary judgment, plaintiff contends that the administrative law judge ("ALJ") in this case erred by: (1) improperly evaluating plaintiff's obesity as less than "severe" at step two under the standards set out in Social Security Ruling 02-1p; (2) improperly assigning "little weight" to the medical findings of Dr. DuPratt, a treating physician; (3) improperly finding

---

[1]  This case was referred to the undersigned pursuant to Eastern District of California Local Rule 302(c)(15) and 28 U.S.C. § 636(c), and both parties voluntarily consented to proceed before a United States Magistrate Judge, 28 U.S.C. § 636(c)(1); Fed. R. Civ. P. 73; E. Dist. Local Rule 301.  (Dkt. Nos. 9, 15.)

1  plaintiff's subjective complaints to be not credible to the extent that they are inconsistent with the

2  ALJ's Residual Functional Capacity ("RFC") assessment; (4) failing to state how much weight

3  she gave to the RFC opinion of the non-examining physician; and (5) failing to adequately

4  explain her "medium" RFC finding.  (Pl.'s Mot. for Summ. J., Dkt. No. 16 at 6-13.)  The

5  Commissioner filed an opposition to plaintiff's motion, along with a cross-motion for summary

6  judgment.  (Def.'s Cross-Mot. for Summ. J., Dkt. No. 17.)  For the reasons stated below, the

7  court grants plaintiff's motion for summary judgment, denies the Commissioner's cross-motion

8  for summary judgment, and remands this case to the ALJ for further proceedings.

9  I.     BACKGROUND[2]

10         A.     Procedural Background

11                On January 29, 2007, plaintiff filed an application for Supplemental Security

12  Income benefits, alleging an onset date of August 1, 2006.  (Administrative Transcript ("AT")

13  10.)  The Social Security Administration denied plaintiff's application initially, on May 3, 2007,

14  and upon reconsideration on June 8, 2008.  (AT 47-48.)  Plaintiff filed a request for a hearing on

15  June 30, 2008, and the ALJ conducted a hearing regarding plaintiff's claims on April 19, 2010.

16  (AT 32, 64.)  Plaintiff, who was represented by a non-attorney representative, testified at the

17  hearing.  (AT 35-42.)  A vocational expert ("VE") also testified at the hearing.  (AT 42-45.)

18                In a decision dated June 17, 2010, the ALJ denied plaintiff's application for

19  benefits based on a finding that plaintiff was "capable of performing past relevant work as a baby

20  sitter" and that plaintiff could perform other work available in the national economy as a hand

21

22        [2]  Because the parties are familiar with the factual background of this case, including
    plaintiff's medical history, the undersigned does not exhaustively relate those facts here.  The
23  facts related to plaintiff's impairments and medical history will be addressed only insofar as they
    are relevant the issues presented by the parties' respective motions.

24        Additionally, to the extent the undersigned uses the present tense in referring to or
    describing plaintiff's alleged conditions or functional abilities, or the ALJ's or Appeals Council's
25  characterizations of the same, the undersigned clarifies that such references are to plaintiff's
    conditions or functional abilities at the time of the ALJ's or Appeals Council's decision, unless
26  otherwise indicated.

1   packager and as a small parts assembler.   (AT 7-19.)  The ALJ's decision became the final

2   decision of the Commissioner when the Appeals Council denied plaintiff's request for review.

3   (AT 1.)  Plaintiff subsequently filed this action.

4           B.        Summary of the ALJ's Findings

5           The ALJ conducted the required five-step evaluation and concluded that plaintiff

6   was not disabled within the meaning of the Act.  At step one, the ALJ concluded that plaintiff

7   had not engaged in substantial gainful activity since January 29, 2007, the date plaintiff filed her

8   application.  (AT 12.)  At step two, the ALJ concluded that plaintiff had the following "severe"

9   impairments: "diabetes, hypertension, headaches, back and leg pain, leg numbness, and hand

10  numbness."  (Id.)  At step three, the ALJ determined that plaintiff's impairments, whether alone

11  or in combination, did not meet or medically equal any impairment listed in the applicable

12  regulations.  (Id.)

13          The ALJ further determined that plaintiff has the RFC to perform "medium

14  work."  (Id.)  In making this RFC determination, the ALJ found that plaintiff's "subjective

15  complaints are much worse than the objective findings" in the record.  (AT 17.)  The ALJ gave

16  "substantial weight" to the opinion of the examining physician, Dr. Brimmer, because the ALJ

17  found that it was "reasonably well supported by medical findings and not inconsistent with the

18  overall evidence in the file."  (AT 14.)  The ALJ assigned "little weight" to the opinion of the

19  other examining physician, Dr. DuPratt.  (AT 14-15.)

20          At step four, the ALJ found that, considering the VE's testimony, plaintiff was

21  capable of performing her past work as a baby sitter.  (AT 17.)  In addition, the ALJ determined

22  that plaintiff, given her "age, education, work experience, and [RFC], there are other jobs that

23  exist in significant numbers in the national economy that [plaintiff] can also perform."  (AT 18.)

24  The ALJ relied on the VE's testimony, and found that plaintiff could perform jobs such as hand

25  ////

26  ////

1  packager and small parts assembler[3].  (Id.)  Based on plaintiff's ability to perform her past work

2  and to perform jobs that exist in significant numbers in the national economy, the ALJ found that

3  plaintiff is "not disabled."  (Id.)

4  II.      STANDARDS OF REVIEW

5         The court reviews the Commissioner's decision to determine whether it is (1) free

6  of legal error, and (2) supported by substantial evidence in the record as a whole.  Bruce v.

7  _____

8         [3] Disability Insurance Benefits are paid to disabled persons who have contributed to the
   Social Security program, 42 U.S.C. §§ 401 et seq.  Generally speaking, Supplemental Security

9  Income is paid to disabled persons with low income.  42 U.S.C. §§ 1382 et seq.  Under both
   benefit schemes, the term "disability" is defined, in part, as an "inability to engage in any

10 substantial gainful activity" due to "any medically determinable physical or mental impairment
   which can be expected to result in death or which has lasted or can be expected to last for a

11 continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).
   A five-step sequential evaluation governs eligibility for benefits.  See 20 C.F.R. §§ 404.1520,

12 404.1571-1576, 416.920, 416.971-976; see also Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).
   The Ninth Circuit Court of Appeals has summarized the sequential evaluation as follows:

13
              Step one:  Is the claimant engaging in substantial gainful
14            activity?  If so, the claimant is found not disabled.  If not, proceed
              to step two.
15
              Step two:  Does the claimant have a "severe" impairment?
16            If so, proceed to step three.  If not, then a finding of not disabled is
              appropriate.
17
              Step three:  Does the claimant's impairment or combination
18            of impairments meet or equal an impairment listed in 20 C.F.R., Pt.
              404, Subpt. P, App.1?  If so, the claimant is automatically
19            determined disabled.  If not, proceed to step four.

20            Step four:  Is the claimant capable of performing his past
              work?  If so, the claimant is not disabled.  If not, proceed to step
21            five.

22            Step five:  Does the claimant have the residual functional
              capacity to perform any other work?  If so, the claimant is not
23            disabled.  If not, the claimant is disabled.

24 Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

25        The claimant bears the burden of proof in the first four steps of the sequential evaluation
   process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential
26 evaluation process proceeds to step five.  Id.

1   Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009).  This standard of review has been described as

2   "highly deferential."  Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 690 (9th Cir.

3   2009).  "Substantial evidence means more than a mere scintilla but less than a preponderance; it

4   is such relevant evidence as a reasonable mind might accept as adequate to support a

5   conclusion."  Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1222 (9th Cir. 2009)

6   (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)); accord Valentine, 574 F.3d at

7   690.  "The ALJ is responsible for determining credibility, resolving conflicts in medical

8   testimony, and for resolving ambiguities."  Andrews, 53 F.3d at 1039; see also Tommasetti v.

9   Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) ("[T]he ALJ is the final arbiter with respect to

10  resolving ambiguities in the medical evidence.").  Findings of fact that are supported by

11  substantial evidence are conclusive.  42 U.S.C. § 405(g); see also McCarthy v. Apfel, 221 F.3d

12  1119, 1125 (9th Cir. 2000).  "Where the evidence as a whole can support either a grant or a

13  denial, [the court] may not substitute [its] judgment for the ALJ's."  Bray, 554 F.3d at 1222; see

14  also Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("'Where evidence is

15  susceptible to more than one rational interpretation,' the ALJ's decision should be upheld.")

16  (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)).  However, the court "must

17  consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum

18  of supporting evidence.'"  Ryan, 528 F.3d at 1198 (quoting Robbins v. Soc. Sec. Admin., 466

19  F.3d 880, 882 (9th Cir. 2006)); accord Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir.

20  2007).  "To determine whether substantial evidence supports the ALJ's decision, [a court]

21  review[s] the administrative record as a whole, weighing both the evidence that supports and that

22  which detracts from the ALJ's conclusion."  Andrews, 53 F.3d at 1039.

23  III.    DISCUSSION

24          Plaintiff alleges that the ALJ erred by: (1) improperly evaluating plaintiff's

25  obesity as less than "severe" at step two under the standards set out in Social Security Ruling

26  02-1p; (2) improperly assigning "little weight" to the medical findings of Dr. DuPratt, a treating

5

1  physician; (3) improperly finding plaintiff's subjective complaints to be not credible to the extent

2  that they are inconsistent with the ALJ's RFC assessment; (4) failing to state how much weight

3  she gave to the RFC opinion of the non-examining physician; and (5) failing to adequately

4  explain her "medium" RFC finding.  The undersigned addresses each of these contentions in

5  turn.

6      A.      The ALJ Properly Considered Plaintiff's Obesity

7          Plaintiff first contends that the ALJ erred at step two by not listing plaintiff's

8  obesity among the impairments that the ALJ determined to be "severe."  (Pl.'s Mot. for Summ. J.

9  at 6-8.)  At step two, the ALJ determined that plaintiff had the following severe impairments:

10 "diabetes, hypertension, headaches, back and leg pain, leg numbness, and hand numbness."  (AT

11 12.)  Absent from this list was plaintiff's obesity.  Plaintiff is 5'1", and on the date of her

12 recorded maximum weight, weighed about 275 pounds.  (AT 262.)  For the reasons stated below,

13 the undersigned finds that the ALJ adequately considered plaintiff's obesity for purposes of step

14 two of the analysis.

15         An ALJ must consider a claimant's obesity throughout the sequential evaluation

16 process, including whether it constitutes a "severe" impairment at step two of the analysis.

17 Social Security Ruling ("SSR")[4] 02-1p, 67 Fed. Reg. 57859-02 (Sept. 12, 2002); accord Burch,

18 400 F.3d at 682.  "According to the Social Security Rules, obesity, as other medical impairments,

19 will be deemed a 'severe' impairment, 'when alone or in combination with another medically

20 determinable physical or mental impairment(s), it significantly limits an individual's physical or

21 mental ability to do basic work activities.'"  Burch, 400 F.3d at 682 (quoting SSR 02-1p, 67 Fed.

22 Reg. 57859-02 (Sept. 12, 2002)).  "In determining whether a claimant's obesity is a severe

23

24    [4] "The Secretary issues Social Security Rulings to clarify the Secretary's regulations and
   policy." Bunnell v. Sullivan, 947 F.2d 341, 346 n.3 (9th Cir. 1991).  Although "SSRs do not
25 carry the 'force of law,' . . . they are binding on ALJs nonetheless." Bray, 554 F.3d at 1224
   (citation omitted).  Courts will "defer to [SSRs] unless they are plainly erroneous or inconsistent
26 with the Act or regulations." Quang Van Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

1   impairment, an ALJ must 'do an individualized assessment of the impact of obesity on an

2   individual's functioning.'"  Id.  "An impairment or combination of impairments may be found

3   'not severe only if the evidence establishes a slight abnormality that has no more than a minimal

4   effect on an individual's ability to work.'"  Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005)

5   (quoting Smolen v. Chater, 80 F.3d. 1273, 1290 (9th Cir. 1996)).

6           Plaintiff is correct that her Body Mass Index ("BMI") is Level III, or "extreme"

7   under SSR 02-1p.[5]  Plaintiff is also correct in noting that those with extreme obesity are at greater

8   risk of developing obesity-related impairments; however, a high BMI does not automatically

9   necessitate a finding that a claimant's obesity constitutes a severe impairment for purposes of

10  step two.[6]  See SSR 02-1p, 67 Fed. Reg. 57859-02 (Sept. 12, 2002) ("There is no specific level of

11  weight or BMI that equates with a 'severe' or a 'not severe' impairment.").  Rather, SSR 02-1p

12  requires an ALJ to "do an individualized assessment of the impact of obesity on an individual's

13  functioning when deciding whether the impairment is severe."  Id.

14          Here, the ALJ conducted an individualized assessment of the impact of plaintiff's

15  obesity on her ability to function.  (AT 15-16.)  In fact, the ALJ acknowledged in the assessment

16  "that obesity may aggravate the severity of various impairments," but also that "there is no

17  formula compelling a finding of a disabling condition based upon [BMI] superimposed upon a

18  physical impairment or combination thereof."  (AT 15.)  In analyzing the effect plaintiff's obesity

19

20          [5]  SSR 02-1p states that a BMI of over 40 is "extreme."  Although plaintiff's weight
    fluctuated over the course of the examinations in the record, at all times she had a BMI above 40.
    (E.g., AT 257-58, 260, 265, 346.)

21

22          [6]  Throughout her motion for summary judgment, plaintiff makes the argument that her
    BMI would have qualified her as impaired at step three under former listing 9.09.  (Pl.'s Mot. for
    Summ. J. at 6-9.)  An ALJ determines whether "a claimant's impairment meets or equals an
23  impairment listed in Appendix 1 to Subpart P of Regulations No. 4."  Tackett v. Apfel, 180 F.3d
    1094, 1099 (9th Cir. 1999).  The Listing of Impairments describes specific impairments of each
24  of the major body systems "which are considered severe enough to prevent a person from doing
    any gainful activity."  Id. (citing 20 C.F.R. § 404.1525.)  If a claimant meets or equals a listed
25  impairment he or she will be found disabled at this step without further inquiry.  Id. (citing 20
    C.F.R. § 404.1520(d).)  Because former listing 9.09 is no longer operative, however, the
26  undersigned declines to consider plaintiff's obesity under that rubric.

                                                    7

1  had on her other impairments and overall functional capabilities, the ALJ made the following

2  findings:

> 3  Even though she is overweight, her diabetes and hypertension are
>    controlled with meds.  Her obesity and its effects have been considered
> 4  and weighed by the undersigned.  In regards to her leg numbness and hand
>    numbness, the claimant has had no limitations in these areas based on
> 5  consultative exam.  Also, her treating physician did not impose any
>    limitations.  It is noted that no restrictions were made by her treating
> 6  physician.

7  (AT 16.)  The medical evidence in the record supports these findings and the ALJ's ultimate

8  finding that plaintiff's obesity did not constitute a "severe" impairment.  Generally, plaintiff's

9  treating sources show that plaintiff's diabetes and hypertension, which are typically exacerbated

10 by obesity, were well controlled through plaintiff's use of medication.  (See, e.g., AT 257, 323).

11 Aside from one x-ray result indicating that plaintiff's back showed "marked degenerative disc

12 disease" (AT 286), the objective findings in the record suggest that plaintiff only had "mild"

13 degenerative disc disease.  (See AT 285, 294, 327-28.)  Moreover, Dr. Brimmer noted during her

14 examination of plaintiff that plaintiff was "obese . . . but [did] not seem to be in any acute

15 distress" and that while plaintiff "ambulated somewhat slowly," she had "no apparent limp" and

16 could "stand on her tiptoes, heels, hop on each foot independently and perform a full squat."

17 (AT 225-27.)  These examination notes and other evidence in the record support the ALJ's

18 finding that plaintiff's obesity did not have more than a minimal effect on plaintiff's capabilities

19 or her other impairments.  See Burch, 400 F.3d at 682; Webb, 433 F.3d at 686.  Accordingly, the

20 ALJ did not err in omitting plaintiff's obesity from the list of severe impairments at step two.

21          In any event, even assuming that the ALJ erred in not listing obesity as a "severe"

22 impairment, such error is harmless because it is nonprejudicial to plaintiff.  See Stout v. Comm'r

23 of Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) ("We have also affirmed under the

24 rubric of harmless error where the mistake was nonprejudicial to the claimant . . . .").

25 "[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims."

26 Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing Bowen, 482 U.S. at 153-54).  If an

1    ALJ determines that a claimant has one or more "severe" impairments then the ALJ will continue

2    the analysis; however, if the ALJ finds no "severe" impairments, the analysis will end at step two

3    because the claimant is deemed not disabled.  Here, the ALJ found that plaintiff had a number of

4    severe impairments and, accordingly, continued on to the later steps of the analysis.  (AT 12.)

5    Thus, the ALJ resolved step two in plaintiff's favor and continued to assess her case; the ALJ's

6    determination that plaintiff's obesity did not constitute a "severe" impairment did not prejudice

7    plaintiff at step two.  See Burch, 400 F.3d at 682 (holding that the omission of obesity as a severe

8    impairment at step two did not prejudice claimant because the step was resolved in claimant's

9    favor and that possible prejudice could have occurred only in the steps not resolved in claimant's

10    favor).[7]

11          B.     The ALJ Did Not Err In Assigning "Little Weight" To Dr. DuPratt's Opinion

12          Plaintiff argues that the ALJ's assignment of "little weight" to Dr. DuPratt's

13    opinion was not based on substantial evidence.  (Pl.'s Mot. for Summ. J. at 11-12.)  For the

14    reasons stated below, this argument is not well-taken.

15          There are three types of physicians from which medical opinions are recognized in

16    social security cases: "(1) those who treat the claimant (treating physicians); (2) those who

17    examine but do not treat the claimant (examining physicians); and (3) those who neither examine

18    nor treat the claimant (nonexamining physicians)."  Lester, 81 F.3d at 830.  "The ALJ must

19    consider all medical opinion evidence."  Tommasetti, 533 F.3d at 1041 (citing 20 C.F.R. §

20    404.1527(b)).  Generally, the opinion of a doctor who has treated the claimant should be entitled

21    to more weight than doctors who did not treat the claimant, and an examining doctor's opinion is

22    entitled to greater weight than that of a non-examining doctor.  Id.

23          Where a treating or examining physician's opinion is contradicted by another

24

25        [7] Plaintiff's other arguments all relate to the ALJ's RFC assessment and are addressed below.  (See Pl.'s Mot. for Summ. J. 6-13.)  Plaintiff does not contest the ALJ's finding at step

26    three that plaintiff's impairments do not amount to an impairment or combination of impairments that meets or equals a listed under the applicable regulations.  (See id. at 6-8.)

1    doctor, the "[ALJ] must determine credibility and resolve the conflict." Valentine, 574 F.3d at

2    692 (quoting Thomas v. Barnhart, 278 F.3d 947, 956-57 (9th Cir. 2002)).  "However, to reject

3    the opinion of a treating physician 'in favor of a conflicting opinion of an examining

4    physician[,]' an ALJ still must 'make[ ] findings setting forth specific, legitimate reasons for

5    doing so that are based on substantial evidence in the record.'" Id. (quoting Thomas, 278 F.3d at

6    957).  "'The ALJ can meet this burden by setting out a detailed and thorough summary of the

7    facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'"

8    Tommasetti, 533 F.3d at 1041 (quoting Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir.

9    1989)).  However, the ALJ cannot simply offer his conclusions, "[h]e must set forth his own

10   interpretations and explain why they, rather than the doctors', are correct." Orn v. Astrue, 495

11   F.3d 625, 632 (9th Cir. 2007) (citing Embrey v. Brown, 849 F.2d 418, 421-22 (9th Cir. 1988)).

12   Moreover, "a finding that a treating source medical opinion . . . is inconsistent with the other

13   substantial evidence in the case record means only that the opinion is not entitled to 'controlling

14   weight,' not that the opinion should be rejected." Id. at 631-32 (quoting SSR 96-2p, 1996 WL

15   374188, at *4 (July 2, 1996)).  "In many cases, a treating source's medical opinion will be

16   entitled to the greatest weight and should be adopted, even if it does not meet the test for

17   controlling weight." Id. at 132.  Here, Dr. DuPratt is a treating physician and Dr. Brimmer is an

18   examining physician.  Accordingly, the ALJ must have been able to show that her reasons for

19   assigning little weight to Dr. DuPratt's opinion were specific, legitimate, and based on

20   substantial evidence in the record.  Valentine, 574 F.3d at 692.

21           Dr. DuPratt treated plaintiff on one occasion and, on this occasion, conducted a

22   physical assessment of plaintiff, and noted plaintiff's ability to perform certain work-related

23   activities.  (AT 244-54.)  Based on this examination, he determined that plaintiff had the

24   following functional limitations: the ability to occasionally lift and carry up to fifty pounds, the

25   ability to stand for up to an hour and walk for up to half an hour without interruption in an eight

26   hour work day, and the complete inability to stoop, kneel, crouch, crawl, or climb.  (AT 246-50.)

10

He also opined that plaintiff was "in constant pain from obesity and spinal problems" and that she could not ambulate without the assistance of two canes or a wheelchair.  (AT 246-47, 253.) As stated above, the ALJ gave this opinion "little weight."  (AT 17.)  The ALJ gave the following reasons for assigning the opinion little weight:

> [T]he undersigned gives little weight to the Dr. DuPratt's assessment and finds the standing/walking limitations too restrictive.  Also, the postural limitations are too limiting [sic] finding the claimant cannot stoop, kneel, crouch, or crawl.  The limited exam by Dr. DuPratt has shown minimal findings, such as straight leg raise with pain complaints. There are no x-rays or MRI of the lumbar spine to substantiate the physician's assessment. . . . The claimant's neuro exam was intact, DTR's were 2+, and there was no edema or atrophy noted.  His own reports fail to reveal the type of significant clinical and laboratory abnormalities one would expect if the claimant was in fact disabled and the doctor did not specifically address this weakness.  His assessment lacks any significant orthopedic or neurological deficit in  either of the lower extremities does not support the physician's assessment that the claimant can stand/walk for one hour only, and cannot perform any postural activities.  Dr. DuPratt saw the claimant one time and his assessment is inconsistent with the medical record as a whole.

(AT 17.)  In essence, the ALJ assigned "little weight" to Dr. DuPratt's opinion because Dr. DuPratt's RFC findings contradicted the medical findings in: (1) his own treatment notes and (2) the record.  The undersigned addresses each of these reasons in turn.

Contradictions between a physician's functional assessment and his or her objective medical findings constitute a legitimate reason for an ALJ to discount or reject that physician's opinion.  See Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (holding that a discrepancy between a physician's observations and functional assessment to be a clear and convincing reason for an ALJ to reject that physician's medical opinion) (citing Weetman v. Sullivan, 877 F.2d 20, 23 (9th Cir. 1989)).  Dr. DuPratt noted during his examination of plaintiff's extremities and musculoskeletal system that there were no signs of muscle atrophy and that plaintiff's extremities also showed no signs of edema or cyanosis.  (AT 245.)  Aside from noting that plaintiff was obese, had hypertension, and complained of feeling pain during leg raising tests, Dr. DuPratt noted no other abnormalities.  (Id.)  These notes regarding plaintiff's

11

1   physical condition contradict Dr. DuPratt's overall assessment of plaintiff's functional

2   limitations, especially with regards to Dr. DuPratt's assessment of plaintiff's ability to stand,

3   walk, and perform other postural activities.  In acknowledging this discrepancy, the ALJ

4   determined that Dr. DuPratt's assessment of plaintiff "lack[ed] any significant orthopedic or

5   neurological deficit in either of the lower extremities" and that Dr. DuPratt's findings did not

6   support his assessment that plaintiff had a complete inability to "stoop, kneel, crouch or crawl."

7   (AT 17.)  Such a contradiction between a physician's functional assessment and his or her

8   objective medical findings is a legitimate reason for an ALJ to discount or reject that physician's

9   opinion.  Bayliss, 427 F.3d at 1216 (holding that a discrepancy between a doctor's notes and his

10  or her assessment of a claimant's ability is a legitimate reason for an ALJ to reject or diminish

11  the weight given to that doctor's assessment when it is based on substantial evidence).

12  Accordingly, the ALJ gave a specific, legitimate reason for ascribing minimal weight to Dr.

13  DuPratt's opinion, and the reason is supported by substantial evidence.

14         The ALJ also offered another reason for discounting Dr. DuPratt's opinion:

15  evidence in the record contradicted Dr. DuPratt's assessment and justifies giving lesser weight to

16  Dr. DuPratt's opinion.  As stated above, "[w]hen there is a conflict between the opinions of a

17  treating physician and an examining physician, as here, the ALJ may disregard the opinion of the

18  treating physician only if he sets forth 'specific and legitimate reasons supported by substantial

19  evidence in the record for doing so.'"  Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001)

20  (quoting Lester, 81 F.3d at 830).

21         The ALJ thoroughly reviewed and discussed the evidence in the record, including

22  the opinions of Drs. Brimmer and DuPratt,[8] and resolved conflicts between those opinions.  (See

23

24         [8] A non-examining physician, Dr. Dipsia, also gave an RFC opinion, which mirrored Dr.
    Brimmer's opinion that plaintiff had no functional limitations.  (AT 230-31.)  The ALJ
25  acknowledged this opinion, but did not formally state how much weight she gave to it.  (See AT
    15.)  The plaintiff raises this issue in her motion for summary judgment and the undersigned
26  addresses it separately below.

1   AT 13-17.)  The ALJ found that Dr. Brimmer's opinion regarding plaintiff's functionality was

2   more consistent with the entire record than Dr. DuPratt's opinion because Dr. Brimmer's finding

3   that plaintiff's "neurologic exam was intact" and her finding that plaintiff had no trouble moving

4   around during the various tests were "based on the medical record as a whole and not

5   inconsistent with the evidence as a whole." (AT 16-17.)  The ALJ's determination is supported

6   by findings from multiple sources in the record, which indicate that plaintiff's conditions were

7   well-controlled through medication (see, e.g., AT 257-58, 262-63, 323, 331) and that she had

8   only "mild" degenerative disc disease (see AT 230, 294, 329, 333).  In any event, plaintiff points

9   to nothing in her brief to suggest that the other evidence in the record supported Dr. DuPratt's

10  opinion over Dr. Brimmer's opinion.  The undersigned concludes that, on balance, the ALJ

11  provided specific and legitimate reasons for discounting Dr. DuPratt's functional assessment, and

12  that those reasons are supported by substantial evidence.

13              C.    Substantial Evidence Supports The ALJ's Credibility Assessment

14              Plaintiff attacks the ALJ's credibility determination.  (Pl.'s Mot. for Summ. J. at

15  12-13.)  The ALJ found that plaintiff's "statements concerning the intensity, persistence and

16  limiting effects of [plaintiff's] symptoms [were] not credible to the extent they [were]

17  inconsistent with the above [RFC]." (AT 16.)  The ALJ summarized plaintiff's testimony as

18  follows: "The claimant alleges significant limitations and she contends that she cannot work due

19  to diabetes, high blood pressure, back and leg pain and headaches."[9]  (Id.)  The ALJ's summary

20  accurately characterizes plaintiff's testimony in this regard.  (AT 35-42.)

21              An ALJ must conduct a two-step analysis "[t]o determine whether a claimant's

22  testimony regarding subjective pain or symptoms is credible."  Lingenfelter, 504 F.3d at 1035-36.

23  In Lingenfelter, the Ninth Circuit Court of Appeals summarized the two-step process as follows:

24

25      [9]  Plaintiff argues that the ALJ did not adduce any subjective symptom allegations made
    by plaintiff outside of a statement acknowledging that plaintiff "contends that she cannot work."
    (Pl.'s Mot. for Summ. J. at 12.)  However, the ALJ questioned plaintiff during the hearing and
26  elicited testimony regarding her subjective symptoms.  (AT 34-42.)

> First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.  Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. . . .

Id. at 1036 (citations and quotation marks omitted).  In weighing a claimant's credibility, an ALJ may consider, among other things, the "'[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains."  Thomas, 278 F.3d at 958-59 (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)); see also Burch, 400 F.3d at 680 ("In determining credibility, an ALJ may engage in ordinary techniques of credibility evaluation, such as considering claimant's reputation for truthfulness and inconsistencies in claimant's testimony.").  If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing." Thomas, 278 F.3d at 959.

Neither the ALJ nor the Commissioner cited to evidence of malingering in the record, and there appears to be none.  The ALJ was therefore required to provide clear and convincing reasons for discounting plaintiff's credibility.  The ALJ gave a number of reasons for discrediting plaintiff's subjective complaints.  First, the ALJ stated that plaintiff's "subjective complaints are much worse than the objective findings."  (AT 17.)  Noting a conflict between a claimant's subjective complaints and the objective medical evidence stated in the record constitutes a specific and substantial reason for a finding that claimant not credible.  See Morgan

14

1  v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999) ("Citing the conflict between

2  Morgan's testimony of subjective complaints and the objective medical evidence in the record. . .

3  the ALJ provided specific and substantial reasons that undermined Morgan's credibility."). Dr.

4  Brimmer examined plaintiff, finding that plaintiff had a "normal neurologic examination," "had

5  no positive leg raising," and that her back and knees did not have "any decreased range of

6  motion." (AT 220.) Plaintiff underwent two x-rays of her back, the more recent of which

7  showed only mild findings consistent with a separate MRI result. (AT 329, 333.) Additionally,

8  the ALJ found that the record showed that plaintiff's "allegedly disabling impairment(s) was

9  present at approximately the same level of severity prior to the alleged onset date," while plaintiff

10  was still working as a babysitter (AT 16), which indicates that, contrary to plaintiff's allegations,

11  plaintiff's impairments were not disabling. Plaintiff argues that the ALJ improperly discounted

12  Dr. DuPratt's opinion in her analysis of plaintiff's credibility. (Pl.'s Mot. for Summ. J. at 13.)

13  However, the undersigned finds that the ALJ did not err with respect to Dr. DuPratt's opinion for

14  the reasons described above. The ALJ did not err in determining that the evidence in the record

15  does "not justify [plaintiff's] contention that [her impairments] keep her from working." (AT

16  16.)

17       The ALJ also discounted plaintiff's credibility because her treatment consisted

18  only of medication and no other types of therapy. (Id.) The ALJ stated that exams from May and

19  September of 2007 showed that plaintiff's diabetes and hypertension were controlled. (Id.) An

20  ALJ may use a claimant's favorable response to conservative treatment for impairments, and the

21  pain associated with those impairments, as a reason for undermining the claimant's claims of

22  disabling pain. See Tommasetti, 533 F.3d at 1040 (finding that Tommasetti's favorable response

23  to mild treatments, including medication, undermined his complaints regarding the disabling

24  nature of his pain). Additionally, "[i]mpairments that can be controlled effectively with

25  medication are not disabling for the purpose of determining eligibility for SSI benefits." Warre

26  v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006). Plaintiff argues that the

15

ALJ "cherry-picked" the exam findings in the record to find that plaintiff's diabetes and hypertension were well-controlled.  (Pl.'s Mot. for Summ. J. at 13.)  However, as the Commissioner points out, there are a number of references in the record that substantiate the ALJ's statement that plaintiff's diabetes and hypertension were controlled with medication. (See, e.g., AT 257-58, 262-63, 323, 331.)  Prior to the examinations in May and September of 2007, Dr. Brimmer examined plaintiff and opined that her then-uncontrolled blood pressure may have contributed to her headaches.  (AT 227.)  The only opinion that was contrary to these findings was Dr. DuPratt's, and as described above, the ALJ did not err in discounting that opinion.  Several opinions indicating that these impairments were well-controlled with medication were rendered after Dr. DuPratt's assessment.  Therefore, the ALJ's reason was supported by substantial evidence.

The ALJ's final reason for rejecting plaintiff's testimony was that plaintiff "responded to questioning and sat through the whole hearing."  (AT 16.)  Plaintiff contends that this observation amounts to impermissible "sit and squirm jurisprudence" and cites to the standard used in Perminter v. Heckler, 765 F.2d 870, 872 (9th Cir. 1985).  However, as the Commissioner notes, the Ninth Circuit Court of Appeals has since clarified that "[t]he inclusion of the ALJ's personal observations does not render the decision improper."  Morgan, 169 F.3d at 600 (quoting Sellard v. Shalala, 37 F.3d 1506 (9th Cir. 1994)); see also Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985).  SSR 96-7p also permits an ALJ to "consider his or her own recorded observations of the individual as part of the overall evaluation of the credibility of the individual's statements."  SSR 96-7p, 1996 WL 374186, at *5 (July 2, 1996).  Accordingly, the ALJ did not err in including her own observations of plaintiff in assessing plaintiff's credibility.

"Where . . .  the ALJ has made specific findings justifying a decision to disbelieve an allegation . . . and those findings are supported by substantial evidence in the record, [this court's] role is not to second-guess that decision."  Morgan, 169 F.3d at 600 (quoting Fair v. Bowen, 885 F.2d 597, 603 (9th Cir.1989)).  The undersigned finds that, on balance, the ALJ

1   based her credibility determination on substantial evidence.

2       D.   The ALJ's Failure To State The Weight She Gave To The Non-Examining
             Physician's Opinion Constituted Harmless Error

3

4           Plaintiff contends that the ALJ erred by failing to state what weight she gave to

5   the non-examining physician's opinion as required by SSR 96-6p.  (Pl.'s Mot. for Summ. J. at 9.)

6   An ALJ must acknowledge the opinions of state agency and other program physicians in the

7   record and state how much weight he or she has given to each of those opinions.  SSR 96-8p,

8   1996 WL 374184, at *1-4 (July 2, 1996).  A non-examining physician, Dr. Dipsia, reviewed the

9   clinical findings from Dr. Brimmer's examination of plaintiff and rendered the opinion that

10  plaintiff had no functional limitations and that plaintiff's impairments were "non severe."  (AT

11  230-31.)  Dr. Dipsia's opinion completely mirrored Dr. Brimmer's findings and assessment that

12  plaintiff had no functional limitations.  The ALJ specifically addressed Dr. Dipsia's opinion,

13  stating that Dr. Dipsia "opined that the claimant's impairment was non-severe" (AT 15);

14  however, she did not formally state how much weight she gave to this opinion.  Any error arising

15  from the ALJ's omission is harmless, as it did not impact the ALJ's ultimate disability

16  conclusion.  See Stout, 454 F.3d at 1055 ("We have also affirmed under the rubric of harmless

17  error where the mistake was . . . irrelevant to the ALJ's ultimate disability conclusion.").  Dr.

18  Dipsia rendered the same functional assessment opinion as Dr. Brimmer, and the assessment was

19  based on a review of the same clinical findings that Dr. Brimmer had considered.  The ALJ gave

20  "significant weight" to Dr. Brimmer's opinion (AT 17) and acknowledged that Dr. Dipsia opined

21  that plaintiff's impairments were non severe (AT 15).  The ALJ's discussion of Dr. Brimmer's

22  opinion was tantamount to a discussion of Dr. Dipsia's opinion because the opinions were

23  identical and based on the same evidence.  Accordingly, the omission was harmless error.

24  ////

25  ////

26  ////

1        E.      The ALJ Failed To Adequately Explain The RFC Finding That Plaintiff Could
2                Perform "Medium" Work

3                Plaintiff argues that the ALJ erred by failing to give any reasons for finding that

4        plaintiff could perform "medium" work, which "correspond[ed] to no other opinion on offer."

5        (Pl.'s Mot. for Summ. J. at 9-11.)  Plaintiff also argues that the ALJ erred by not addressing

6        plaintiff's RFC on a function-by-function basis.  (Id. at 10.)  Plaintiff contends that, for these

7        reasons, the ALJ's RFC determination is "improbable" and "unreviewable," and, thus, should be

8        reversed.  (Pl.'s Mot. for Summ. J. at 11.)  The undersigned addresses each argument in turn and

9        finds plaintiff's first argument to be without merit; however, the undersigned agrees with

10       plaintiff that the ALJ's failure to conduct a function-by-function RFC assessment constituted

11       reversible error.

12               1.      The ALJ's RFC Assessment Was Consistent With The Evidence And
13                       Other Opinions In The Record

14               A district court must uphold an ALJ's RFC assessment where the ALJ applies the

15       proper legal standard and substantial evidence in the record as a whole supports the decision.

16       Bayliss, 427 F.3d at 1217.  The applicable regulations require an ALJ to consider all of the

17       medical evidence available in the record and "explain in [his or her] decision the weight given to

18       . . . [the] opinions from treating sources, nontreating sources, and other nonexamining sources."

19       20 C.F.R. § 416.927(f)(2)(ii).  In making an RFC determination, an ALJ cannot go "outside the

20       record to medical textbooks for the purpose of making his own exploration and assessment as to

21       [a] claimant's physical condition," and an ALJ cannot ignore uncontradicted medical opinions.

22       Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975).  However, an ALJ can consider those

23       limitations for which there is support in the record aside from properly-rejected evidence or

24       subjective complaints, including limitations "consistent with" a medical source's findings.  See

25       Batson v. Comm'r of the Soc. Sec. Admin., 359 F.3d 1190, 1197-98 (9th Cir. 2004) (finding that

26       "substantial evidence" supported ALJ's RFC determination that plaintiff "can walk about four

18

blocks at a time, stand for one hour, sit for one hour, occasionally lift 10-20 pounds, and drive for

15 minutes at a time," because these findings were "*consistent with*" — albeit not identical to —

examining therapist's determination that plaintiff "can lift 26 pounds occasionally, lift 13 pounds

frequently, and complete an 8 hour work day given an opportunity to change positions.")

(emphasis added); Bayliss, 427 F.3d at 1217 (upholding ALJ's RFC determination because "the

ALJ took into account those limitations for which there was record support that did not depend

on the claimant's subjective complaints."); see also Banks v. Barnhart, 434 F. Supp. 2d 800, 805

(C.D. Cal. 2006) (where plaintiff argued that the ALJ's RFC assessment was not supported by

substantial evidence because "[i]t was only the ALJ himself, a layperson in medical matters, who

opined that [plaintiff] can tolerate all but heavy concentration of respiratory contamination or

pollution," the district court nonetheless found that physician's opinions constituted "substantial

evidence" to support the ALJ's RFC determination).  Moreover, an ALJ does not need to adopt

any specific medical source's RFC opinion as his or her own.  Vertigan v. Halter, 260 F.3d 1044,

1049 (9th Cir. 2001) ("It is clear that it is the responsibility of the ALJ, not the claimant's

physician, to determine residual functional capacity."); 20 C.F.R. § 416.946 ("[T]he

administrative law judge . . .  is responsible for assessing your residual functional capacity.").

Here, the ALJ found that plaintiff ultimately had the RFC to perform "medium

work." (AT 17.)  This determination departed from the medical opinions in the record. Dr.

Brimmer, plaintiff's examining physician, opined that plaintiff had no functional limitations (AT

220), while Dr. DuPratt, a treating physician who examined plaintiff once, opined that plaintiff

could occasionally lift and carry up to fifty pounds, stand for up to an hour and walk for up to

half an hour without interruption in an eight hour work day, and could never stoop, kneel,

crouch, crawl, or climb (AT 244-50).  The ALJ gave Dr. Brimmer's opinion "significant weight"

and Dr. DuPratt's opinion "little weight" in determining plaintiff's RFC.  (AT 17.)

The ALJ's RFC assessment was "based upon the findings of the consultative

examiner," Dr. Brimmer.  (Id.)  Although she interpreted Dr. Brimmer's findings as evidencing a

19

1  "medium" level of functionality instead of Dr. Brimmer's ultimate conclusion that plaintiff had

2  unlimited functionality, this does not make the ALJ's decision "improbable" and "unreviewable,"

3  as plaintiff claims.  The ALJ's RFC assessment was "consistent with" Dr. Brimmer's, as a

4  plaintiff having "no" functional limitations (AT 228) could necessarily perform "medium" work

5  (AT 17).  See Batson, 359 F.3d at 1197-98.  Moreover, where the evidence is susceptible to more

6  than one rational interpretation, the ALJ's conclusion must be upheld.  Morgan, 169 F.3d at 599

7  (citing Andrews, 53 F.3d at 1041).

8       Here, the ALJ did not go outside the record in rendering her RFC assessment.  See

9  Day, 522 F.2d at 1156.  Rather, she based her RFC assessment in part on medical evidence from

10  Dr. Brimmer, on the repeated findings by various medical providers that plaintiff had normal

11  exam results and that her conditions were well-controlled through medication, on a discrediting

12  of plaintiff's subjective testimony, and on a rejection of Dr. DuPratt's extreme assessment of

13  plaintiff.  (AT 13-17.)  A review of Dr. Brimmer's clinical findings shows that she noted that

14  plaintiff exhibited some signs of potential limitation, such as the note stating that plaintiff

15  "ambulated somewhat slowly but with no apparent limp."  (AT 225.)  Additionally, the ALJ did

16  not completely reject Dr. DuPratt's findings or opinion, finding that "Dr. DuPratt ha[d] shown

17  minimal findings, such as straight leg raise with pain complaints," and gave "little weight" to his

18  assessment.  (AT 17.)

19       Despite being a "layperson," the ALJ was entitled to draw from all the medical

20  evidence in the record, including portions of the opposing functional limitations posited by Drs.

21  DuPratt and Brimmer, in order to resolve conflicts in the medical evidence.  See Batson, 359

22  F.3d at 1195.  The ALJ's consideration of the evidence in the record shows that she properly

23  exercised this discretion.  Accordingly, plaintiff has not compellingly shown that the ALJ erred.

24  ////

25  ////

26  ////

2.  The ALJ's Failure to Address Plaintiff's Limitations On A Function-By-Function Basis And With Respect To Her Past Work As She Performed It Constituted Reversible Error

Plaintiff argues that the ALJ's failure to assess plaintiff's limitations on a function-by-function basis was reversible error.  (Pl.'s Mot. for Summ. J. at 10-11.)  The argument is well-taken.  An ALJ's RFC assessment must "first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis . . . . Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy."  SSR 96-8p, 1996 WL 374184, at *1-4 (July 12, 1996).  The reason for this requirement is to ensure that, at step four of the analysis, the ALJ properly determines whether the claimant is capable of still performing his or her past work as he or she actually performed it.  Id.  The functional requirements of a claimant's prior job as the claimant actually performed it might not mirror the functional requirements stated under the relevant category of the Dictionary of Occupational Titles ("DOT"); for example, the claimant's prior job may have required the claimant to perform certain functions at a more strenuous level of exertion than what the DOT listing requires for those particular functions.[10]

---

[10]  According to SSR 96-8p, 1996 WL 374184, at *3-4 (July 2, 1996),

> RFC may be expressed in terms of an exertional category, such as light, if it becomes necessary to assess whether an individual is able to do his or her past relevant work as it is generally performed in the national economy.  However, without the initial function-by-function assessment of the individual's physical and mental capacities, it may not be possible to determine whether the individual is able to do past relevant work as it is generally performed in the national economy because particular occupations may not require all of the exertional and nonexertional demands necessary to do the full range of work at a given exertional level.
>
> At step 5 of the sequential evaluation process, RFC must be expressed in terms of, or related to, the exertional categories when the adjudicator determines whether there is other work the

1          Here, the ALJ failed to conduct any semblance of a function-by-function analysis

2    _____

3          individual can do. However, in order for an individual to do a
     full range of work at a given exertional level, such as sedentary,
4    the individual must be able to perform substantially all of the
     exertional and nonexertional functions required in work at that
5    level. Therefore, it is necessary to assess the individual's
     capacity to perform each of these functions in order to decide
6    which exertional level is appropriate and whether the individual
     is capable of doing the full range of work contemplated by the
7    exertional level.

8          Initial failure to consider an individual's ability to perform the
     specific work-related functions could be critical to the outcome
9    of a case.  For example:

10         1.   At step 4 of the sequential evaluation process, . . . [i]t is very
     important to consider first whether the individual can still do
11   past relevant work as he or she actually performed it because
     individual jobs within an occupational category as performed for
12   particular employers may not entail all of the requirements of
     the exertional level indicated for that category in the Dictionary
13   of Occupational Titles and its related volumes.

14         2. The opposite result may also occur at step 4 of the sequential
     evaluation process. When it is found that an individual cannot
15   do past relevant work as he or she actually performed it, the
     adjudicator must consider whether the individual can do the
16   work as it is generally performed in the national economy.
     Again, however, a failure to first make a function-by-function
17   assessment of the individual's limitations or restrictions could
     result in the adjudicator overlooking some of an individual's
18   limitations or restrictions. This could lead to an incorrect use of
     an exertional category to find that the individual is able to do
19   past relevant work as it is generally performed and an
     erroneous finding that the individual is not disabled.
20
           3. At step 5 of the sequential evaluation process, the same
21   failures could result in an improper application of the rules in
     appendix 2 to subpart P of the Regulations No. 4 (the
22   Medical-Vocational Guidelines) and could make the difference
     between a finding of "disabled" and "not disabled."  Without a
23   careful consideration of an individual's functional capacities to
     support an RFC assessment based on an exertional category,
24   the adjudicator may either overlook limitations or restrictions
     that would narrow the ranges and types of work an individual
25   may be able to do, or find that the individual has limitations or
     restrictions that he or she does not actually have.
26

1 and, while plaintiff raised the issue (Pl.'s Mot. for Summ. J. at 10-11), the Commissioner did not

2 argue otherwise.  In assessing plaintiff's RFC, the ALJ summarized and discussed plaintiff's

3 testimony, other record evidence including medical evidence, and the medical opinions.  (AT

4 13-17.)  She stated that plaintiff's allegations regarding the severity of her symptoms were not

5 credible, gave "little weight" to Dr. DuPratt's opinion, and "substantial weight" to Dr. Brimmer's

6 opinion.  (AT 16-17.)  The ALJ then abruptly concluded that "claimant can perform medium

7 exertional work" without any further explanation.  (AT 17.)  Based on this RFC finding, the ALJ

8 opined that plaintiff could perform her past work as a babysitter, stating that plaintiff "is able to

9 perform it as actually and generally performed" and "is not required to stand, sit or lift beyond

10 her current capacity."  (Id.)  However, the ALJ never described plaintiff's capacity with respect

11 to standing, sitting and lifting.  The ALJ also never described the level of exertion her prior job

12 as a babysitter actually required with respect to standing, sitting, and lifting.  These omissions

13 amount to error.  The reason for the function-by-function analysis, as clarified in SSR 96-8p, is to

14 ensure that an ALJ assesses the claimant's ability to work based on the claimant's actual

15 functional limitations instead of assuming that plaintiff's particular situation fits into a generic

16 category of functionality.  Accordingly, the ALJ erred at step four.[11]  The undersigned reverses

17 and remands so the ALJ can properly assess plaintiff's RFC on a function-by-function basis,

18 including a determination of plaintiff's limitations and the functional requirements of plaintiff's

19 past work as actually performed.

20

21    [11] The ALJ also proceeded to step five of the analysis and found that plaintiff could
perform other work as performed in the national economy, namely, work as a hand packager and
22 small parts assembler.  (AT 18.)  However, the ALJ's failure to perform a function-by-function
analysis at step four also renders the ALJ's step five finding erroneous, and the error is not
23 harmless.  See SSR 96-8p, 1996 WL 374184, at *1-4 (July 12, 1996) ("Additionally, the lack of
an initial function-by-function analysis can result in an improper consideration of a claimant's
24 functional capabilities at step five, as "the adjudicator may either overlook limitations or
restrictions that would narrow the ranges and types of work an individual may be able to do, or
25 find that the individual has limitations or restrictions that he or she does not actually have.")
Without the requisite function-by-function analysis, the undersigned cannot determine whether
26 the ALJ properly assessed plaintiff's ability to perform the jobs the ALJ described.

23

IV.     CONCLUSION

By remanding this matter for further proceedings, the undersigned does not intend to suggest that the ultimate outcome should or should not be different.  Instead, the matter is remanded because the ALJ's decision is legally deficient for the reasons set forth herein.

For the foregoing reasons, IT IS HEREBY ORDERED that:

1.     Plaintiff's motion for summary judgment (Dkt. No. 16) is granted;

2.     Defendant's cross-motion for summary judgment (Dkt. No. 17) is denied; and

3.     The Clerk is directed to enter a judgment in favor of plaintiff pursuant to sentence four of 28 U.S.C. § 405(g) and remand this matter to the Social Security Administration for further proceedings.

IT IS SO ORDERED.

DATED:  September 20, 2012

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE